Anthony CROWELL, Appellant,

v.

Robert F. ZAHRADNICK, Superintendent of the Virginia State Penitentiary, Appellee.

No. 77–1186.

United States Court of Appeals,
Fourth Circuit.

Argued June 7, 1977.

Decided Dec. 20, 1977.

Karen Zokoff, Third Year Law Student (Michael E. Geltner, Appellate Litigation Clinic, Georgetown University Law Center, Washington, D. C., and Patricia H. Char, Third Year Law Student, on brief), for appellant.

Linwood T. Wells, Asst. Atty. Gen., Richmond, Va. (Anthony Troy, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellee.

Before WINTER, RUSSELL, and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

Anthony Crowell appeals from the denial of his petition for habeas corpus, wherein he raised two claims: that he was arrested without probable cause to believe that he had committed an offense, and that there was insufficient evidence to support the conviction. The district court found, with respect to the claim of lack of probable cause, that Crowell had not yet exhausted his state remedies. However, the court proceeded to find there existed ample evidence to show that neither claim possessed merit.

On appeal to this court, Crowell does not take exception to the holding of the district court that there was evidence sufficient to support the conviction, but has injected into the case a new issue, the admission into evidence of inculpatory statements made while in police custody. He argues before us that the admission of the statements violated the Fourth Amendment because the statements were obtained after an illegal arrest. He also maintains, for the first time, that the confessions were not voluntary because of allegedly illegal conduct of the interrogating officers.

We agree with the district court that the petitioner has not exhausted his state remedies. He has not litigated the admissibility of the statements on constitutional grounds in the Virginia courts or in the district court, raising it for the first time here. No objection was made at trial to the use of the statement, so, of course, no reasons for the objection were given. Moreover, neither the constitutional issue nor even the admissibility of the statement was raised in his direct appeal to the Virginia Supreme Court as the notice of appeal indicates and his brief admits,[1] nor was

---

1. Crowell argues that he has exhausted the possibility of appeal in the state courts because of state procedural bars to his claim. Specifically, he says he could not raise the constitutional objections in his appeal to the Virginia Supreme Court because he did not make objection to the introduction of the statement and was barred by the Virginia contemporaneous objection rule found in Rule 5:7 (as amended now 5:21) of the Rules of the Supreme Court of Virginia. The rule in effect at times pertinent here provided that ordinarily error would not be noticed unless the ground for objection was stated with reasonable certainty in the trial court, and also that only errors assigned in the notice of appeal and assignments of error would be noticed on appeal. That argument

presents an alternative ground for affirming the decision of the district court. As we see no distinction between the present case and the recent decision in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), we find neither the cause nor prejudice necessary for relieving Crowell of the requirements of the Virginia rule. Crowell's claim is therefore barred by independent state procedural grounds. *Wainwright*, supra.

*Wainwright* also answers Crowell's claim that the trial court was under an obligation to, *sua sponte*, examine the voluntariness of a proffered self-incriminating statement of the accused, when the defendant fails to object. At pp. 85–91, 97 S.Ct. at pp. 2505–2509.

either raised in a state habeas corpus proceeding.[2] As the petitioner's constitutional claim has been raised initially in the federal courts on appeal from the dismissal of his petition for habeas corpus, Crowell has failed to exhaust the state remedies available to him, 28 U.S.C. § 2254, and the decision of the district court dismissing the petition is

*AFFIRMED.*[3]

WINTER, Circuit Judge, dissenting:

I respectfully dissent.

### I.

I think it overtechnical to hold that, when Crowell acting *pro se* alleged in the district court that his conviction was invalid and that he was entitled to release because the arresting officers had no probable cause to make the arrest, Crowell interjects a "new issue" when his counsel appointed to represent him before us argues that the admission into evidence of Crowell's inculpatory statements was illegal because they were tainted by his illegal arrest. We are taught

**2.** Even if barred by the contemporaneous objection rule from maintaining a direct appeal, and, to some extent, a state petition for habeas corpus relief, it appears that state habeas relief is available if the petitioner can show that the failure to make the objections to the admission of the inculpatory statements was the result of inadequate assistance of counsel. See *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680, 681 (1974), cert. den. *Parrigan v. Paderick*, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1974); *Ferguson v. Superintendent*, 215 Va. 269, 208 S.E.2d 749 (1974). If the error in Crowell's trial was as apparent as he now makes it out to be, he could doubtless present a colorable argument claiming that the failure to make the objections to the use of the statements deprived him of adequate assistance of counsel. Thus, we cannot say, on these facts, that resort to state habeas corpus proceedings would be futile, and because Crowell may present a colorable claim in a state habeas corpus petition, he has failed to exhaust state remedies. See *Spencer v. Cundiff*, 413 F.Supp. 1246 (W.D.Va. 1976).

**3.** As we have noted, Crowell did not raise the issue of the admissibility of the inculpatory statements until he briefed the appeal to this court. His petition for habeas corpus relief as it addressed this point merely complained of

by *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), to construe *pro se* pleadings liberally and not to dismiss an application for a writ of habeas corpus for a failure to allege a good cause of action unless " 'plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " 404 U.S. 521, 92 S.Ct. 596, quoting from *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Certainly it is a well-established principle that a federal habeas court will not inquire into the validity of a state prisoner's arrest in the abstract, and that such inquiry will be made only if the arrest resulted in the obtention of evidence, physical or oral, used to convict the applicant. Obviously the district court recognized this rule. It did not dismiss Crowell's claim of lack of probable cause for his arrest on the ground that he had failed to allege any consequences from the arrest other than restraint of his person and subjecting him to trial. Instead, the district court dealt with the issue on its merits, thereby implying that it knew that more was at issue than the mere validity of

"No Probable Cause for Arrest—The Prosecution never presented any evidence or testimony showing how or why Petitioner was originally arrested for the crime for which he was convicted." Ordinarily, a claim of illegal arrest presents no ground for habeas corpus relief when a convicted criminal defendant does not claim that he was denied a fair trial by the introduction of evidence which came from the illegal arrest. *Roundtree v. Riddle*, 417 F.Supp. 1274 (W.D.Va.1976). Since Crowell made no claim concerning the admissibility of the statement in the district court and until the issue was presented to this court, as a third alternate ground for our decision, we adhere to our precedent that we will not ordinarily consider an issue not presented to the district court when it is raised for the first time on appeal. *McGowan v. Gillenwater*, 429 F.2d 586 (4th Cir. 1970).

We also note additional authority sustaining the district court's ruling that state remedies had not been exhausted. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), requires that "the federal claim [must] be fairly presented to the state courts." p. 275, 92 S.Ct. p. 512. The federal claims here were not so presented.

the arrest. We should do no less. Crowell's entire claim that he was illegally convicted on the basis of his inculpatory statements rests upon the assertion that they were tainted by the violation of his fourth amendment rights. The premise was squarely raised in the district court and squarely decided there. I think that we should address it.[1]

## II.

On the merits, I think that the district court was incorrect in concluding that Crowell's arrest did not occur until after Crowell was taken to police headquarters, advised of his *Miranda* rights, and made incriminating statements about a break-in at the Arco Service Station. Rather, I think that on the *present* state of the record, the conclusion is ineluctable that the arrest occurred earlier when Crowell was taken from his home to the police Station.[2] At that time, Crowell had not made incriminating statements, and without them I think that the police lacked probable cause to arrest him. I would therefore conclude that at the time the arrest was made, it was illegal. Whether that illegality tainted the subsequent inculpatory statements is an issue on which I will comment later.

The facts pertinent to my views are these: A certain Ronald Colina locked up his Arco Service Station at 8:15 p. m. on August 16, 1974. When he reopened at approximately 8:15 a. m. on August 17, he found the outside soft drink dispensing machine broken into and two panes in the front door of the station were broken out. Various cartons of cigarettes were found outside the building and others had been moved to a point near the broken door. Other personal property was missing.

During the early morning hours of August 17, a policeman, in responding to an unrelated call, saw an unoccupied automobile parked at the end of a dead end street approximately 100 feet from the Arco station. The policeman parked at the Arco station and shortly thereafter the automobile came by. The policeman stopped the vehicle and found that Crowell was the driver, and there were three other passengers in the car. At the request of the policeman, Crowell exhibited his driver's license and other identification; he and the policeman conversed; and the policeman, finding nothing amiss, permitted him to go on his way. At this time, the policeman had no knowledge that there had been a break-in at the Arco station.

After 8:15 a. m., when the break-in had been discovered, the policeman went to Crowell's address, which he had learned a few hours earlier, advised him of the break-in, and told Crowell that he was under suspicion of burglary and he must go to the police station. Enroute to the police station, the police took Crowell to the Arco station. They told him that this was where he had broken in; and when he denied knowledge of their charge, they took him to the police station. There he was questioned extensively and told, apparently falsely, that the police had a witness who would testify that Crowell perpetrated the crime. Eventually Crowell made a statement putting the blame for the burglary on his companions, but incriminating himself.

1. Crowell's contention, advanced first before us, that he was tricked by the police into making inculpatory statements and that therefore they were not made voluntarily, stands on a different footing. I agree that we should not address them.

2. In the present record, only the testimony of Crowell, taken at his trial, touches upon the circumstances under which he was taken into custody. His testimony was that he was *required* to go to the police station in the custody of the police. The district court stated that Crowell voluntarily accompanied the police to the police station, but I can find no support for this finding. In my ultimate disposition of the case, I would reopen the record to permit a fuller showing of how Crowell came into police custody and also to permit a fuller showing of what the police knew at the time that Crowell was arrested if it is concluded that he was arrested at home. Thus, I would permit a redetermination of both the fact of arrest and the existence of probable cause for the arrest. I would do this because the time of the arrest and its legality were not issues in the trial.

Although Crowell was not formally arrested until after he had made the incriminating statement, on this record,[3] I can only conclude that the arrest occurred when he was taken from his home to the police station for questioning. At that time, he was given no alternative about accompanying the police. *See Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). More importantly, at that time, in my view, the police lacked probable cause to arrest him. *See, Henry, supra; Jones v. Peyton*, 411 F.2d 857, 861–62 (4 Cir. 1969).

If Crowell was arrested without probable cause, it is possible, although by no means certain, that the illegal arrest so tainted the subsequent inculpatory statements, even though *Miranda* warnings were given, that the statements were constitutionally inadmissible. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

### III.

The major problem which this case presents is whether the district court, on an application for a writ of habeas corpus, should have adjudicated the validity of the arrest and if it found that the arrest was illegal when made, whether that illegality tainted the inculpatory statements thereafter made. At his state trial, Crowell made no objection to the admission of the inculpatory statements on the ground that they were tainted by a violation of his fourth amendment rights. He did move to strike the Commonwealth's evidence at the conclusion of the Commonwealth's case. He did appeal to the Supreme Court of Virginia, but his appeal was confined to the

contentions that the trial court should have granted his motion to strike the Commonwealth's evidence and that the verdict was contrary to the law and the evidence. The Supreme Court of Virginia denied Crowell's petition for a writ of error. Crowell did not seek any collateral review in the state courts, but it seems clear that he would have had no right to litigate the issue in the state courts since he had not raised it at trial and pursued it on appeal, except to the extent that he claimed ineffective assistance of counsel.[4] *Spencer v. Cundiff*, 413 F.Supp. 1246, 1247–48 (W.D.Va.1976).

The majority adopts the Commonwealth's argument that *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), forecloses Crowell from litigating whether his inculpatory statements were tainted by an illegal arrest because of Virginia's procedural bar to his claim. Stated otherwise, the argument is that the failure to make a contemporaneous objection in accordance with state practice forecloses a later assertion of the invalidity of the conviction on the very ground which might have been asserted at trial, because there is a valid state procedural ground to uphold the validity of the conviction.

There can be no doubt that *Wainwright* adopted such a rule and that it applied it to a case in which the claim for habeas corpus relief was so fundamental as the voluntariness of a confession. In a thoughtful opinion in *Jiminez v. Estelle*, 557 F.2d 506 (5 Cir. 1977), Judge Tuttle discussed the holding in *Wainwright* and its historical context. Judge Tuttle also called attention to the "failsafe" provisions of the *Wainwright* rule, namely that, notwithstanding the rule, a federal habeas court could adjudicate for the first time the federal constitutional

---

3. See n.1, *supra*.

4. I cannot agree that the failure to object to the admission of the inculpatory statements or in some other manner to raise the claim that they were the product of an illegal arrest would always amount to ineffective assistance of counsel. Counsel may well have been aware of the possible objection but unwilling to assert it for one or more of a variety of reasons suffi-

ciently meritorious to foreclose a conclusion of incompetency. Thus, I do not think that Crowell necessarily has an unexhausted available state remedy. I caution also that a failure to recognize that not every error in the course of a trial amounts to ineffectiveness of counsel may well lead to an undoing of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

claim of a prisoner if he can show that his failure to object should be excused for "cause" and that the error resulted in actual "prejudice" to him.

In considering the application of *Wainwright* and the exceptions to its general rule to the instant case, I begin by recognition that *Wainwright* was decided *after* the district court's decision in the case at bar. Thus, the case at bar was not litigated in the district court with *Wainwright* in mind. Nonetheless, I think it manifest that there was the "prejudice" required by *Wainwright* to relieve Crowell from Virginia's procedural bar. One who reads the transcript of his trial can only conclude that Crowell's inculpatory statements were essential to his conviction. Only three witnesses testified against him: (1) the manager of the Arco station who established that the station had been burglarized but who could shed no light on who burglarized it, and (2) two police officers—the one who saw Crowell in the vicinity of the station contemporaneously with the burglary, and the other who interrogated Crowell and obtained the inculpatory statements. Without these statements, Crowell undoubtedly would have been acquitted. Thus, the admission of his inculpatory statements did prejudice him because without them he would have been freed.

Whether Crowell can establish the "cause" required by *Wainwright* to relieve him from his failure to object to the admission of his statements is more problematical. First, *Wainwright* gives very little guidance as to what constitutes an adequate "showing of cause" for the petitioner's failure to make a contemporaneous objection on a proper ground before the trial court, *Jiminez v. Estelle*, 557 F.2d at 510, and understandably, since *Wainwright* was decided after the proceedings in the district court in the instant case, the present record is devoid of any reason to show why the objection was not made. It seems to me, however, that since the general rule in *Wainwright* is not absolute but does admit the exception that it will not be applied where a habeas petitioner establishes "prejudice" and "cause," the majority is unwarranted in applying the general rule at this stage of the proceedings. Rather, we should adopt the approach in *Jiminez* and remand the case to the trial court to determine whether there was "cause" for the failure to object and whether that cause satisfies the exception in *Wainwright*. I confess my inability, however, to suggest to the district court precisely what may constitute "cause" within the meaning of *Wainwright* until such time as the Supreme court fleshes out the precise content to be given that term, as it has indicated that it would do. 433 U.S. at 87, 97 S.Ct. 2506.

To summarize, therefore, I would vacate the judgment of the district court and remand the case for further proceedings. On remand, I would direct the district court to determine whether there was "cause" within the meaning of *Wainwright* for Crowell's failure to object to the admission of his inculpatory statements. To my mind, the record conclusively establishes that there was "prejudice." If the district court finds that such "cause" exists, it should reopen the record to receive whatever additional evidence may be offered, both with respect to the time at which Crowell was arrested and whether there was probable cause for the arrest. Should the district court, after having found that such "cause" exists, also find that Crowell was arrested at his home before being taken to the police station and that the police did not have probable cause to arrest him at that time, it should then turn to the question of whether the illegal arrest tainted the obtention of Crowell's incriminating statements so as to render them inadmissible. Depending upon its conclusions with respect to the various issues that I have identified, the district court should thereafter grant or withhold appropriate relief.